LOUIS FRŒLICH *vs.* THE SOUTHERN EXPRESS COMPANY.

Where the complaint alleged that the plaintiff had delivered to the defendant, an Express Company, an article valued at less than two hundred dollars, and then averred the loss of it by negligence, and demanded a judgment for a sum over two hundred dollars, *it was held* that the claim was founded upon a contract for less than two hundred dollars, and that, therefore, the Superior Court had no jurisdiction of the case.

When the claim is founded on a contract for less than two hundred dollars, the Superior Court has no jurisdiction of it, though it may be a case in which the plaintiff might formerly have sued in tort, and though the damages may be uncertain.

When it appears upon the complaint that the claim is founded on a contract for less than two hundred dollars, an objection to the jurisdiction of the Superior Court may be taken in the Supreme Court, though it appears from the pleadings in the former Court that the objection was not intended to be taken in that Court.

This was a civil action tried at the Superior Court of DUPLIN County, at the Fall Term, 1871, before his Honor *Russell, J.*

The plaintiff alleged in his complaint that he delivered to the agent of the defendant, for transportation to Hartford,

Connecticut, one barrel of wine, valued at one hundred and sixty-four dollars, to be paid for on delivery; that the defendant was a common carrier, and that it had failed to deliver the article as it was its duty to do, wherefore the plaintiff demanded judgment for two hundred and fifty dollars and costs of suit.

The defendant answered, and denied the allegation of the complaint.

On the trial the plaintiff obtained a verdict for one hundred and eighty-seven dollars and seventy-eight cents, for which he had judgment, and the defendant appealed.

When the case was called for argument in the Supreme Court, the counsel for the defendant objected that the Superior Court had no original jurisdiction of the case, and moved on that ground for a judgment against the plaintiff, and upon that question the case was decided.

*Battle & Son,* for the plaintiff.
*Moore & Gatling,* for the defendant.

PEARSON, C. J. The plaintiff is met at the outset, by the objection . This action is founded on contract, and it is ordained by the Constitution, *Art. IV, Sec.* 33, " The several Justices of the Peace shall have exclusive original jurisdiction, under such regulations as the General Assembly shall prescribe, of all civil actions founded on contract, wherein the sum demanded shall not exceed two hundred dollars, and wherein the title to real estate shall not be in controversy." This action is founded on contract, and the amount in dispute (to-wit, $164 and interest,) does not exceed two hundred dollars.

To meet this objection, several positions were taken by the learned counsel for the plaintiff.

1. The " sum *demanded*" is $250.

This raises the question, Where it appears by the complaint that the " amount in dispute " is less than two hundred

dollars, can jurisdiction be conferred upon the Superior Court by a *demand* of more than that sum, or *vice versa?* Where it appears by the complaint, that the amount in dispute is more than two hundred dollars, can jurisdiction be conferred upon a Justice of the Peace, by a *demand* of less than that sum? This is a palpable attempt to evade the Constitution and, if allowed, the provisions of that instrument, in regard to the line of division betweeen the jurisdiction of the Superior Court and the Courts of Justices of the Peace, will be nugatory and will depend upon the option of the plaintiff. The question, as it seems to us, is too plain for discussion. Manifestly, "the sum demanded" is used in the sense of "the amount in dispute," on the assumption that plaintiffs will act fairly and only demand such an amount as they may reasonably expect to recover; when the contrary appears, it is the duty of the Courts "*ex mero motu*" to interfere and prevent an evasion of the Constitution. In olden times, when it was found that, by reason of the vast increase in commercial dealings, the Court of Common Pleas in England, to which was assigned by statute all actions founded on contracts, was oppressed with business, the fiction of *quo minus* in the Court of Exchequer and the contrivance of the *ac etiam* clause in the Kings Bench were winked at and favored by the Courts, in order to divide the jurisdiction in regard to contracts, and to relieve the Court of Common Pleas of a part of a burden which was too heavy for it. But the condition of things here is entirely different, and the Courts are not at liberty to wink at, or favor, an attempt to evade the *Constitution.*

2. The plaintiff had his election, under the facts of this case, to declare in tort or in contract, and in support of the jurisdiction the Court will assume that the plaintiff declares in tort.

Under the old mode of procedure there were many instances where plaintiffs had an election to declare in contract or tort. E. G. If one took my horse and sold him, I could waive the tort and sue for "money had and received for my use."

If one sold me a horse with warranty of soundness, I might declare on the contract or declare in tort for false warranty, and join case for deceit, so that if I failed to prove the warranty I might recover on the count for deceit, by proof of "the *scienter.*"

If one collected money as my agent, I could bring case as for a tort, and his discharge in bankruptcy would not bar the action. *Williamson* v. *Dickens* 5 Ired. 259.

This is one case of the many refinements and fictions that brought the noble science of pleading into disrepute and caused it to totter and fall.

Under the blow given to it by the Constitution of 1868, Art. IV, Sec. 1, "The distinction between actions at law and suits in equity and the forms of all such actions and suits shall be abolished and there shall be in this State but one form of action, &c."

So the plaintiff can take nothing by the fact that under the old mode of procedure he had his election to declare in tort or in contract. In one case the price agreed on for the barrel of wine was $164, and the wine was to be delivered on payment of that sum, "C. O. D," had the defendant delivered the wine, received the money and failed to pay it over.

The plaintiff in an action founded on contract could have recovered $164 and interest. As the defendant failed to deliver the wine and receive the money, certainly the plaintiff can recover no more; and it can make no difference whether he declares in contract or in tort, the measure of damage is the agreed price of the wine and interest. As the distinction between declaring in tort or in contract is a refinement abolished by the Constitution, taking it in any point of view this is a civil action founded on contract.

3. The learned counsel insisted that the words, "under such regulations as the General Assembly shall prescribe," have an important bearing upon the construction of this article. We confess ourselves unable to see it. If the words had been

under such *restrictions* as the General Assembly may prescribe, and any restriction had been enacted, there would have been force in the position; but the word is "regulations," that is, such details in the mode of procedure as the General Assembly may prescribe.

Accordingly, the General Assembly has by the C. C. P. made certain regulations. Title XX. It is to be styled the Court of the Justice, manner of commencing actions in Justice's Court is prescribed; also jurisdiction and manner of proceeding, the pleading in these Courts, keeping dockets, jury trial, &c. In short, by the regulations prescribed, much more importance is given to the Court of Justices of the Peace than used to be attached to a trial before a single Justice.

4. The only change intended to be made by the Constitution was to abolish the distinction between debts due on bonds, notes or liquidated accounts stated in writing and signed, &c., and debts due on parol agreements, or for goods, wares, &c., sold and delivered, or for work and labor done, or for specific articles &c. (Rev. Code ch. 62, sec. 6) and put both classes up to two hundred dollars; that is, raise the jurisdiction of a single Justice up to $200, subject to the former limitations as to the nature of the contract.

A perusal of the Code of Civil Procedure, title XX, will satisfy any one that such was not the construction put upon the Constitution by the General Assembly which enacted the C. C. P., and in it prescribed regulations for the Court of Justices of the Peace. All of the machinery provided is intended for the exercise of a very extended jurisdiction. Legislative construction is not binding upon the Courts, but is entitled to much consideration.

Apart, however, from this Legislative construction, the meaning of the Constitution is too plain to admit of any doubt: "exclusive original jurisdiction of all civil actions founded on contract." The provision in respect to actions involving the title to real estate shows that the words are used in the

broadest sense, and the criminal jurisdiction conferred on it shows that this new tribunal was to be a very different thing from that of a trial before a single Justice, under the Rev. Code. A further proof of the importance attached to " Courts of Justices of the Peace " is exhibited in the enumeration of the Courts in which the judicial power of the State is partitioned among the respective Courts; Art. IV, sec. 4.

This new tribunal is erected to take a part of the jurisdiction of that venerable institution " the County Court," which was abolished. Its jurisdiction over wills, letters of administration, &c., is conferred upon the Judge of Probate, its jurisdiction in all civil actions founded in contract where the amount in dispute does not exceed $200, except where title to real estate is involved, and its jurisdiction over all criminal matters where the punishment does not exceed a fine of $50 and imprisonment for one month, is conferred upon " the Court of Justices of the Peace." Its jurisdiction in actions not founded on contract, and in actions founded on contract where " the amount in dispute " exceeds the sum of $200, or where the title to real estate is involved, is conferred upon the Superior Court. This reminds one of the breaking up of the old institution of the " *curia regis* " and the partition of its powers between the Courts of Common Pleas, King's Bench, and Exchequer.

Referring again to the Code of Civil Procedure, we find that, while discarding the distinction between actions at law and suits in equity, and between the *forms* of actions, the whole subject is treated of under four classes, actions founded on contract, actions for the recovery of property real or personal, actions for injuries to and for the conversion or destruction of property, and actions for injuries to person and character. No one can doubt in regard to the fact, that in our case the action is a civil action founded on contract, and falls under the first class. After giving to the subject the degree of consideration to which its importance entitled it, we are forced to the

conclusion, that our case is, according to the meaning of the Constitution, within the original and exclusive jurisdiction of the Court of Justices of the Peace.

5. The learned counsel was then forced to fall back upon his last and strongest position. By the declaration of rights, Constitution *Art.* 1, *Sec.* 19, " In all controversies at law respecting property the ancient mode of trial by jury is one of the best securities of the rights of the people, and ought to remain sacred and inviolable." His argument is—The Court should be slow in coming to the conclusion that it was the intention of the Constitution of 1868 to invade this sacred right, which is embodied in that very instrument—and in the second place, that this invasion, if one was intended, is unwarranted and in violation of a *higher law* than the Constitution, which attribute was claimed for " the declaration of rights."

The first branch of this proposition has been disposed of. In regard to the second, we are not able to see any principle upon which one part of the Constitution can be " a higher law" than the other parts of the same instrument. It is ours to take all of its parts together and declare the true meaning.

This article of the declaration of rights was before the Court in *Smith* v. *Campbell*, 3 Hawks 590, and it is held that it is confined in its operation to controversies respecting property, and does not apply to contracts, at all events to contracts like those embraced by the several statutes giving jurisdiction to single Justices of the Peace.

This article was again brought before the Court in *R. R. Co.* v. *Davis*, 2 Dev. & Bat. 451, and it was held not to apply to proceedings for assessing the value of land, condemned for the use of a railroad or other public purpose. These cases, and particularly the reasoning on which the decisions are put, show that even as against the action of the General Assembly this article has not been allowed to have the sweeping effect claimed for it by the learned counsel. But it must be noted that we are not considering an act of the General Assembly, but the

*Constitution itself* ; and how one part of that instrument can be said to violate another part of it we are at a loss to perceive. Had the Constitution ordained that trial by jury should be abolished, as antiquated and not "up to the progress of the age," this ancient mode of trial in controversies *at law* respecting property should have passed away, and the mode of trial *in equity*, to wit, by the Court or some other mode of trying facts, would have taken its place ; so, as it seems to us, this section of the declaration of rights had no effect "to tie the hands" of the makers of the Constitution, and can only be allowed the effect of influencing, in some degree, the construction of other parts of the instrument.

We failed to perceive the force of the argument drawn from the fact, that from time immemorial "a jury" has been composed of twelve freeholders, and the C. C. P. makes the jury in a Justice's Court consist of but six. Lord Coke tells us that twelve was fixed on for the number of the petit jury, because Jacob had twelve sons, and Christ had twelve disciples; but he allows that on the grand assize the jury was composed of sixteen, in real actions to try title to land. So it seems there is no magic in the number *twelve* save the respect due to immemorial usage; and as the General Assembly, in prescribing regulations for the trial of matters of fact in the Justices' Court, deemed it wise to adopt the number six instead of twelve for a jury, the Courts have no power to control such legislation ; for the power to prescribe regulations is expressly conferred by the Constitution.

The merits of the case turned upon the right of a common carrier to limit the liability imposed by public policy, by means of a special contract supported by a sufficient consideration. We are not at liberty to enter upon this very interesting question, as the case must go off on the jurisdiction.

There is error. Judgment reversed, and judgment for defendant, that he go without day and recover his costs.

PER CURIAM.                    Judgment reversed.