MICHAEL BULLINGER *v.* GABRIEL MARSHALL.

▷ plaintiff, who, as a witness, relates a conversation he had with the defendant, which is by the defendant contradicted in a material particular, can corroborate his testimony by showing by another witness that he made substantially the same statement to that witness, soon after the conversation occurred, as he made on the trial.

An action for deceit in the sale of a mule—an action *ex delicto* under the old system—is not within the jurisdiction of a Justice of the Peace, as provided in Art. IV, sec. 33, of the Constitution.

The Court, during the trial, took a recess, when the jury separated and dispersed, the defendant not objecting, nor his Honor charging them not to do so, nor cautioning them against conversing with any one concerning the pending case: *Held*, to be no ground for a new trial.

*Held further*, that the defendant being disappointed by a witness who told him the day before the trial that he, the witness, would if examined, give him, the defendant, a good character, and which the witness did not do, is not such a surprise as will entitle the defendant to a new trial.

(*Frælich* v. *The Southern Express Company*, 67 N. C. Rep., cited and approved.)

CIVIL ACTION, for deceit in the sale of a mule, tried before *Henry, J.*, at the Spring Term, 1873, of BURKE Superior Court.

On the trial, the plaintiff, as a witness in his own behalf, stated that at the time of making the trade for the mule, the defendant told him the mule was "sound as far as he knew;" but did not tell him the mule had the sweeney and was then well. Plaintiff further stated that he drove the mule to South Carolina; that it limped on the way when travelling over hard ground or when ridden.

The plaintiff detailed a second conversation had with the defendant, after the defendant had sold the mule in South Carolina and returned to his home in Catawba county, in which defendant said that the mule was "sound as far as he knew then," meaning at the time of the sale,) and adding, " of course, it had had the sweeney."

Defendant, as a witness, stated that he told the plaintiff in the first conversation, at the time of making the trade that the mule was " sound as far as he knew then, but that it had had the sweeney."

The plaintiff then offered to prove by another witness, that on the same day, and soon after the second conversation took place, he, the plaintiff, repeated in detail to the witness, both of said conversations, with an account of attendant circumstances, and that the statement made by plaintiff at that time was substantially the same as that given by the plaintiff on the trial. To this the defendant objected, on the ground that the admission of such testimony was in effect allowing the plaintiff to manufacture evidence. His Honor overruled the objection and admitted the testimony. Defendant excepted.

For the defendant, other evidence was admitted, tending to show that the mule was sound at the time of sale and afterwards; and also on the part of the plaintiff showing the contrary.

When his Honor, about the close of his charge to the jury, asked the counsel if they desired any particular instructions, the defendant moved that the plaintiff be *non suited*, on the ground that the damages demanded in the complaint were only

one hundred dollars, and therefore the suit should have been brought in a Justice's Court. Motion refused.

There was a verdict for the plaintiff, whereupon the defendant moved for a new trial, for the reason : That during the progress of the trial, before the testimony was closed, the Court took a recess for dinner ; that during said recess, the jury separated and dispersed, as had been usual during the term of the Court, and talked with persons not of the jury. There was no evidence that the jury conversed with any one in relation to the pending trial. One of the jury was in the sheriff's office, and that while there a conversation occurred between other persons, not of the jury, but what was said did not appear, nor did the conversation influence the juror, who happened to be there on other business. Nor did it appear from the affidavits that the minds of any one of the jury were influenced or prejudiced by what they heard, or that there was any attempt to do so on the part of any one.

As another ground for a new trial, the defendant alleged surprise, concerning which his Honor found the following facts : One Wm. Aiken, who was sworn, went to defendant the day before the trial, and told him if he, Aiken, was introduced as a witness, he would give him, the defendant, a good character ; that Aiken was examined on the trial, and testified, that the defendant was a " sharper," and would take any advantage in a trade. Aiken was in attendance on the Court as plaintiff's witness. Defendant, when examined, said nothing of his interview with Aiken.

The motion for a new trial was overruled by the Court, and the defendant appealed.

*Armfield,* for appellant, submitted :

An appeal lies to the Supreme Court from a determination in the Superior Court granting or refusing a new trial. See C. C. A., p. 113, sec. 299.

" If any defect of justice happened at the trial by surprise, in-

advertence or misconduct, the party may have relief by a new trial." See Black. Com. p. 387, of book 3d.

A new trial may be ordered for the misbehavior of the witness of the party who asks for it. See *Sheppard* v. *Sutter*, Mar. Reports 40 (31.)

" The after declarations of a party shall not be offered for himself to explain his former transactions."

" One party cannot give in evidence a conversation between himself and a third person, in the absence of the other party, for, as to what the party himself said, it was only his own declaration, and as to what the third person said, it was not on oath. *Murphy* v. *McNeil*, Dev. & Bat. 244 ; see also *Ward* v. *Hatch*, 4 Ired. 282 ; *White* v. *Greer*, 5 Jones 47.

This is an action founded on an implied contract. See Black. Com. book 3d, 165. And an implied contract is within the meaning of the word contract in the Constitution of the State, art. 4, sec. 36.

See *Town of Edenton* v. *Wood*, 65 N. C. Rep. 399, where it is declared that an action for a penalty incurred by violation of a town ordinance, is " a civil action arising out of a contract."

Even if the objection to the jurisdiction had not been taken below, as it was in this case, it would be the duty of this Court to dismiss the action upon the ground that the Superior Court had no jurisdiction. See Bacon's Abridg.. p. 18, sec. 1. title Abatement, (13) and *State* v. *Roberts*, 1 Haywood 176 ; *Anonymous*, 2 Haywood 115 (275,) and 1st Carolina Law Repository 365 (33.)

*Folk*, with whom were *Busbee & Busbee*, contra.

1st. Before the recent act amending the law of evidence, if the credibility of a witness was attacked from the nature of his evidence, from his relation, from bad character, from proof of inconsistent statements, or from imputations directed against him in cross examination, the party in whose favor he was called might prove other consistent statements for the

purpose of sustaining him. In this case the testimony given by defendant was in direct conflict with that given by plaintiff, so there was an impeachment on both sides, and each party endeavored to strengthen his testimony by proof of good character. It was but another instance of corroboration to go a step farther, and offer proof of previous consistent statements. *March* v. *Harrell,* 1 Jones 329. But it is insisted that parties themselves cannot thus sustain their own testimony. The act making parties competent and compellable to testify in their own cases is substantially a copy of 14 and 15 Vic. ch. 99, amendatory of Lord DENMAN's act, 6 and 7 Vict ch. 85, which recites that the inquiry after truth is often obstructed by incapacities created by the present law ; and that it is desirable that full information be laid before the triers, and that they should exercise their judgment in the credit of the witnesses, &c. The act is professedly to extend and enlarge the rules of evidence ; and it would be singular if it were allowed to abolish, by implication, well-settled rules of the old law of evidence. Indeed, it would seem absurd to allow such corroborative proof to sustain a witness having no interest in the controversy, and deny it to one whom from his very position in the cause is already to some extent impeached.

2. The motion for new trial on the ground of surprise, was addressed to the sound of discretion of his Honor, and this Court will not review his decision.—68 N. C. p. 131, ibid 200, 272, 69 N. C. p. 18, ibid 41. Defendant went into the camp of the enemy to recruit, and ought not to complain that he enlisted a traitor.

PEARSON, C. J. First, the plaintiff was introduced as a witness in his own behalf, and swore that at the time of the sale the defendant said : " The mule was sound as far as he knew, but did not tell him " *the mule had had the sweeny.*"

Here was a direct contradiction. The plaintiff, by way of corroborating his testimony, was allowed to prove that soon after the sale and after the unsoundness of the mule had become apparent, the plaintiff, in a conversation with the witness, in

detailing the circumstances of the trade, told him that the defendant had not disclosed the fact " that the mule had had the sweeney."

We concur with his Honor in the opinion, that this testimony was admissible. Before the late statute, by which parties to an action are made .competent as witnesses, it was a settled rule of evidence, that when a *witness* was impeached, he might be corroborated by proving that soon after the matter occurred he had made the same statement in regard to it. When a party was allowed to . be a witness, it followed as a logical sequence if his testimony be impeached, he may be corrobo· rated by showing that he had, soon after the matter occurred, " made the same statement in regard to it." Why should not this consequence follow ? No answer can be given ; on the contrary, it is in conformity to the avowed policy of the statute by which rejection of testimony on the ground of incompetency is ignored, and the testimony is to be admitted and *weighed by the jury in the scale of credibility.* We yield to the force of this change in the law of evidence, but have no right to express an opinion as to its wisdom, and have only to carry out its corallaries.

2. The action demands damages for a deceit in the sale of a mule, and the allegation made out, a cause of action, which by the former mode of procedure, would have been classed under " *actions ex delicto,*" as distinguished from *actions ex contractu.*" At the trial it was moved on the part of the defendant to non-suit the plaintiff on the ground that the action ought to have been commenced before a Justice of the Peace, as the damages demanded are *only* one hundred dollars.

The Constitution ordains, Art. IV., sec. 23, " The several Justices of the Peace shall have exclusive, original jurisdiction of all civil actions, founded an contract, wherein the sum demanded shall not exceed two hundred dollars, and wherein the title to real estate shall not be in controversy." ·

According to our construction of this section, a Justice of the Peace has not jurisdiction in " actions *ex delicto,*" although

the cause of action may grow out of a contract. It being in form under the old mode of procedure, an action *ex delicto* proves that it is not founded on the contract, but is collateral thereto. There are cases where a party is allowed to waive the tort and sue in contract, as if one takes my horse and sells it and *receives the money* ; I may waive the tort and sue for "money had and received to my use," and if the sum does not exceed two hundred dollars, the jurisdiction belongs to a Justice of the Peace; but if the money be not *received*, my remedy is for the tort, and a Justice of the Peace has not jurisdiction. So if there be a warranty of soundness in the sale of a horse, the vendee may sue upon the contract of warranty, and a Justice of the Peace has jurisdiction, or he may declare in tort for a false warranty and add a count in deceit. (See Williams' notes to Sanders' Reports,) in which case a Justice of the Peace, has not jurisdiction. The plaintiff being permitted to declare *collaterally* in tort for a false warranty, in order to enable him to give in a count for the deceit, which of course was in tort.

Our conclusion is, that the effect of this section of the Constitution is to enlarge the jurisdiction of a Justice of the Peace by raising the amount to the sum of two hundred dollars, and by extending it to cases *founded on contract* for *unliquidated damages*, as in cases of a breach of warranty of soundness and other like instances, but that the jurisdiction does not extend to any matter collateral, although it grew out of the contract, for in such case the action is not founded on the contract. See *Frœlich* v. *Southern Express Co.*, 67 N. C. Rep. 1.

3d. In considering this question, we are confined to " the case" made up and signed by the counsel of the plaintiff and of the defendant, according to C. C. P. The other papers by which the file is uselessly encumbered not made a part of the statement are put out of the case.

The ground of the motion for a new trial was, that when Court took a recess for dinner, the jurors separated and each man went off and got his dinner, and that "his Honor gave the jurors no caution in regard to conversing with persons not

of their number about the case, nor did his Honor give the jury permission to separate or ask the consent of counsel that the jury might be allowed to do so."

His Honor, upon hearing the affidavits and arguments, refused to grant a new trial, and, on the facts set out, we can see no reason to differ with him; the separation of the jury was before "the charge of the Judge," and it is the usual practice for juries in civil cases to separate during recess, either for dinner or for the night, unless such separation be objected to by one of the parties. The defendant knew of the separation of the jury, and if he objected to it, in all fairness he should have done so *before the verdict was rendered.*

4th. Motion for a new trial on the ground that the defendant was "surprised" by the testimony of William Aiken, and "read the affidavit of *the defendant*, herewith sent as a part of this case." So, we are to take the several matters set out in the affidavit *as facts* agreed on; that is to say, Aiken, for the purpose of entrapping the defendant, told him that he would swear that the defendant's general character was good, and when called by him as a witness, swore that his (the defendant's) general character was bad. Taking this to be so, it proves that the defendant was deceived by Aiken, but it does not show that the defendant was *surprised* in the sense given to the word " surprise " by the authorities.

In order to justify the legal inference that the defendant was taken by surprise, two additional facts are necessary :

1. That the defendant was a stranger in the land, and had no other acquaintance present by whom his general character could be proven, for although a man ·is not supposed to be at all times prepared to explain every particular incident of his life, yet he is presumed to be able to prove a good general character unless he happens to be among strangers.

2. There is no averment in the affidavit, that the defendant would be able to prove a good general character at another trial.

Why grant a new trial on the ground of surprise, unless the

affidavit discloses matter showing reason to believe that upon the second trial, the case will be materially changed?

This Court is reluctant to interfere with the ruling of the Judge in the Court below upon matters calling for the exercise of a sound discretion, unless error in the legal inference is apparent.

PER CURIAM.                                        Judgment affirmed.