M. E. HOBBS and J. F. SOUTHERLAND v. C. W. BLAND.

(Decided March 28, 1899).

*False   Warranty—Deceit—Counterclaim.*

1. False warranty and deceit, when growing out of the transaction upon which the action is based, may be pleaded as counterclaims.

2. Where there is an allegation of false warranty it is sufficient to show the warranty and the breach; it is not necessary to show the *scienter*.

3. If there is no warranty, and the defendant relies on the allegation of deceit, he must show the *scienter*.

4. Damages on counterclaim for either false warranty or deceit in the sale of a horse must not be speculative, but actual, and they are to be deducted, if recovered, from the agreed price, and judgment rendered for the balance, if any.

CIVIL ACTION for the possession of personal property embraced in a chattel mortgage, tried before *Robinson, J.,* at Fall Term, 1898, of DUPLIN Superior Court.

The defendant had bought a mare from the plaintiffs for $90, for which sum he gave his note secured by chattel mortgage on other stock. This action was to recover the stock and apply to the debt.

The defendant alleged false warranty and deceit in the sale of the mare, and that she was worthless. The evidence was voluminous and contradictory.

There were no specific instructions given explanatory of the nature and effect of the counterclaims. Among other matters, his Honor charged: "The defendant, having admitted the execution of the note for $90 and the mortgage to secure its payment, the burden is on him to prove to the satisfaction of the jury by the greater weight of the evidence that he is not indebted to the plaintiff."

Plaintiff excepted. Verdict that the defendant owed the plaintiff nothing. Judgment for defendant. Appeal by plaintiff.

*Messrs. Stevens & Beasley,* for plaintiff (appellant).
*Messrs. Allen & Dortch,* for defendant.

FURCHES, J. On the 31st of December, 1895, the defendant bought a bay mare from plaintiff at the agreed price of $90, for which he executed his promissory note, payable to plaintiff on the first day of November, 1896, and to secure the payment of the note he executed a mortgage on the several articles of personal property therein named, which was duly probated and registered. The defendant took the mare home with him and kept and worked the same, until some time in the latter part of March or early part of April, 1896, when he carried her back to plaintiff, saying that she was unsound and could not do his work. He then took a mule in her place, which he kept but one day, when he carried it

back, saying it was old and slow and did not suit him. He then exchanged this mule for another bay mare and got a "collar to boot." This last mare he returned to the plaintiff on or about the 27th day of May, saying she was unsound, and demanded his note and mortgage; but the plaintiff refused to take back this mare, and also refused to give up the defendant's note and mortgage.

The defendant admitted that he bought the mare in December, 1895, and executed the note and mortgage therefor, and that he took the mare and used her; that he took her back and got the mule and took it back, and exchanged it for the other bay mare and collar as stated. But he says that the plaintiff warranted the mare bought in December, when the note and mortgage were given, to be sound; that soon after buying the mare he found out she was not sound, and as soon as he saw the plaintiff (which was a week or two after that) he told the plaintiff that she was not sound, and that was the reason he took her back; that he needed another horse in his crop, and the plaintiff gave him a mule in her place; but the mule was old and slow and he took it back, and exchanged the mule for the second bay mare and collar; that this mare proved to be unsound and he took her back on the 27th of May and demanded his note and mortgage; that plaintiff refused to take the mare back or to give up the note and mortgage, but that he left the mare in the lot of plaintiff. And it was in evidence that plaintiff notified defendant, that if he did not take the mare out of his lot, he would advertise and sell her to the highest bidder and give him credit for the price, which he did, and credited the note with $30.

The plaintiff denied the warranty, and there was a great deal of evidence as to whether there was warranty or not; and if there was any warranty, where it was not a conditional

warranty, to give the defendant another horse in place of the one he bought, and as to whether the plaintiff had not complied with the terms of the contract. Upon this phase of the case the plaintiff asked several special instructions, which were refused.

We see no error in the Court's refusing these prayers for instruction, for the reason that, while some of them contained sound propositions of law applicable to the case, no one of them was correct as a whole.

But when the defendant admitted the trade, the execution of the note and mortgage and that he got the horse for which they were given, that made him liable for the $90. And the mortgage is only a security for the debt, and the property therein named is liable for whatever is still due on the note, if anything is still due.

But the defendant by his answer alleges a breach of warranty, and deceit. The allegation of deceit is not very distinctly stated, but we will treat it as sufficiently stated to be used as a ground of defence, if established.

These defences—false warranty and deceit—are both *ex delicto,* but they might be joined in one action. And as they might be joined in one action *(Bullinger v. Marshall,* 70 N. C., 520) they may be joined in the defendant's answer, which is but a cross-action. To entitle the defendant to damages upon the allegation of false warranty, it is not necessary that he should show the *scienter.* It is sufficient if he shows a warranty and breach of the warranty. If there was no warranty and defendant relies on the allegation of deceit, he must then show the *scienter.* As these defences are *ex delicto*—not on contract—they could not be set up by way of counterclaim, recoupment—if they had not originated out of the same transaction, or cause of action, upon which defendant is sued; but growing out of the transaction upon

HOBBS *v.* BLAND.

which the action is based, they may be so pleaded and set up. *Benton v. Collins,* 118 N. C., 196.

Then, the matters in controversy between plaintiff and defendant are as follows: The defendant owes the plaintiff this $90 note, less the endorsed credit of $30. But if the plaintiff warranted the mare to be sound, when she was not sound, or, if the plaintiff did not warrant the soundness of the mare, but knew that she was not sound, concealed this fact from the defendant, and sold her to him as a sound animal and for the price of a sound animal, and the defendant was endamaged by reason of such unsoundness, he is entitled to recover on his counterclaim such damage as he has sustained by reason of such unsoundness, that is, the difference between the value of the mare if she had been sound, and her value in her unsound condition. He could not recover speculative damages. And if defendant recovers damages, this amount should be deducted from the amount of the $90 note, and plaintiff's judgment should be for the balance, if any.

But the matter was not so treated by his Honor on the trial, but upon this status of the case he charged the jury as follows: "The defendant, having admitted the execution of the note for $90 and the mortgage to secure its payment, the burden is on him to prove to the satisfaction of the jury by the greater weight of the evidence that he is not indebted to the plaintiff."

This part of the charge was excepted to by the plaintiff. The exception was well taken, and must be sustained.

There were other exceptions taken to the charge, involving the questions as to the return of the three animals and their exchange, and as to whether this was not a compliance with the contract. But the facts with regard to these matters being somewhat involved, we do not discuss or pass upon them. But for the error pointed out there must be a new trial.